# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––––

Nᵒ 08-CV-4749 (JFB)

––––––––––––––––––––

OLBIN REYES

Petitioner,

VERSUS

ROBERT ERCOLE,

Respondent.

––––––––––––––––

**MEMORANDUM AND ORDER**
June 1, 2010

––––––––––––––––

JOSEPH F. BIANCO, District Judge

Olbin Reyes (hereinafter "Reyes" or "petitioner") petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury in County Court, Nassau County (the "trial court"), convicted petitioner of the murder of a 14-year old girl and two related weapons charges. The trial court judge later sentenced petitioner to a term of imprisonment of twenty-five years to life for the murder conviction and seven and fifteen years, respectively, on the weapons charges. All sentences are to run concurrently.

In this habeas petition, petitioner challenges his conviction on the following grounds: (1) his Sixth Amendment right to confront his accusers and his right to a fair trial were violated by the testimony of two detectives at trial; (2) autopsy photos of the deceased victim were improperly admitted into evidence; (3) the trial court should have

permitted an alibi witness to testify as part of his defense; (4) his sentence is excessive and should be reduced; (5) the trial court gave the jury an unduly prejudicial verdict sheet; (6) the evidence was legally insufficient to establish his guilt; and (7) his trial counsel was ineffective.

For the reasons stated below, the petition for a writ of habeas corpus is denied in its entirety.

## I. BACKGROUND

The Court has adduced the following facts from the instant petition and underlying state court record.

### A. Factual History

Early on the morning of Sunday, August

26, 2001, 14-year old Jennifer Grimes was walking with friends, Deneshia Stanley and Wisbin Leger, through the neighborhood in which they lived. (T. 323-25; 372-80.)[1] At one point, the three stopped walking, and Jennifer sat down on the curb. (T. 325-26; 381-82.) A dark-blue car drove down the street and, as it passed by, two shots were fired from the car, and the car sped off. (T. 326-29; 385-86.) Wisbin and Deneshia noticed that Jennifer was on the ground and unresponsive. After closer examination, they saw that she had been shot through the chest. (T. 331; 386.)

Police and an ambulance arrived quickly. The officers found that Jennifer did not have a pulse. They began CPR and transported her to the Nassau County Medical Center, which was one and one-half miles from the scene. (T. 270-72.) There, medical personnel continued their efforts to revive her, but these proved unsuccessful. (T. 272-73.) Jennifer was pronounced dead about 15 to 20 minutes after arriving at the hospital. (T. 273.) An autopsy later determined that she had sustained a single gunshot wound to the chest and that this wound resulted in damage that was not survivable, despite medical care. (T. 360-61.)

Nassau County Police began an investigation. Less than six weeks after Jennifer's murder, on October 3, 2001, detectives arrested petitioner and brought him to the Nassau County Homicide Squad. (Tr. 484-91.) At the homicide squad, petitioner waived his Miranda rights (T. 498-501; 544-47) and was interviewed by Detectives Trillo and Aponte. Although petitioner initially denied any involvement in the shooting, he

later told the detectives that he was in the car, but was in the back seat. (T. 503; 550-51.) In response, the detectives told petitioner that they had "spoken to many people" during their investigation, including others in the car and a person who had been arrested the previous day, and that they had learned that petitioner was not in the rear of the vehicle. (T. 503; 551.) According to the detectives' trial testimony, petitioner then responded "I didn't mean to shoot the girl." (T. 503-04; 551.)

After making this admission, petitioner then told the detectives that he was a member of a gang known as "La Mara Salvatrucha" or MS13. (See T. 506-07; 553.) He said that, around the time of Jennifer's murder, a dispute had broken out between MS13 and another gang, known as the Bloods. (T. 507; 553.) On the night of August 25-26, 2001, petitioner and three others decided to drive to New Cassel, an area of Westbury, Nassau County, to "look for some Bloods." (T. 507.) When they got there, they observed two females and a male—i.e., Jennifer and her companions—on the street who they believed—mistakenly—were Bloods. (T. 507-08.) Petitioner told the detectives that he fired two shots from a .38 caliber handgun at the group, intending to shoot and kill the male. (T. 508.)

The detectives then took a break from the interrogation to allow petitioner to eat dinner. (T. 509-10; 563-65.) Following this, the detectives went back over the chain of events petitioner had described and memorialized petitioner's admissions in a written statement. Petitioner made changes to the written statement, which he initialed. He then signed the statement. (T. 510-14; T. 564-78.) After signing the written statement, petitioner agreed to be taken to the Nassau County

---

[1] "T" refers to the trial transcript.

District Attorney's Office to conduct a videotaped interview. That same evening, at the D.A.'s Office, Assistant District Attorney Fred Klein conducted a videotaped interview in which petitioner again detailed his involvement in Jennifer's murder. (T. 609-12.)

Petitioner was subsequently indicted on one count of second-degree murder under an intentional murder theory, one count of second-degree murder under a depraved indifference theory, second-degree criminal weapons possession, and third-degree criminal weapons possession. (T. 244-47.)[2] The case proceeded to trial. At trial, Detectives Trillo and Aponte testified regarding petitioner's oral confession. Additionally, both the written statement signed by petitioner and the videotaped interview were introduced into evidence. (T. 573-78 (written statement); T. 611 (video).) The prosecution also introduced additional evidence that was consistent with petitioner's confessions. Specifically, the prosecution introduced evidence showing that a .38 caliber round was recovered from Jennifer's body and that this round was fired from a revolver. (*See* T. 274-76; T. 412-14.) Moreover, a prosecution witness, Oliver Andrades, testified that he was in the car with petitioner on the night of August 25-26 and that he, petitioner, and two associates had gone "looking for Bloods." (T. 437.) According to Andrades's testimony, he sat in the back seat, and petitioner was in the front passenger seat. (T. 430-41.) Andrades testified that petitioner and the driver identified two females and one male whom they thought were Bloods. They drove past the group twice before parking the car, at which point they turned off the headlights. (T. 437-41.) According to Andrades, they then drove back to where the three people were, and he heard two shots coming from the front seat and "saw the girl was going down." (T. 446.) Andrades also testified that the car they were in was a blue Toyota Camry (T. 430; 434-35), which was consistent with witness Wisbin Leger's testimony that the car was a four-door dark blue car with a spoiler on the back. (T. 327.)

Petitioner testified in his own defense. He claimed to have been at home at the time of the shooting (T. 638.) He also claimed that, while being questioned by the homicide detectives, he was beaten for two and one-half hours (T. 646) and that he was coerced into signing the written statement and doing the videotaped interview. (T. 653-55.) The prosecution then conducted a lengthy cross-examination of petitioner. (T. 659-701.) Petitioner was unable to explain, among other things, why the alleged two and a one-half hour police beating resulted in no visible injuries and why he appeared uninjured on the videotaped interview, which was conducted only a few hours after the alleged beating. (T. 690-93.)

The jury convicted petitioner of second-degree intentional murder, N.Y. Penal Law § 125.25(1), criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(1), and criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02(4). (T. 822-23.) On May 3, 2004, petitioner was sentenced to an indefinite term

---

[2] Both murder counts were based on the murder of Jessica Grimes. (T. 243-44.) Additionally, the driver of the car, Marvin Osorio, was tried separately and convicted of second-degree murder. (*See* Respondent's Brief, *People v. Reyes*, No. 2004-04884, at *ii (App. Div. July 28, 2006).)

of imprisonment of twenty-five years to life for the murder charge, a determinate sentence of imprisonment of fifteen years for the charge of criminal possession of a weapon in the second degree, and a determinate sentence of imprisonment of seven years for the charge of criminal possession of a weapon in the third degree. The court ordered that all sentences were to run concurrently. (Sentencing Tr. 9-11.)

## B. State Appeals

Petitioner appealed his conviction to the Appellate Division, Second Department. The Appellate Division affirmed the conviction in a March 4, 2008 decision. *See People v. Reyes*, 855 N.Y.S.2d 160 (App. Div. 2008).

Petitioner then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's decision. The application for leave to appeal was denied on May 19, 2008. *See People v. Reyes*, 890 N.E.2d 258 (N.Y. 2008).

## C. The Instant Petition

On November 14, 2008, petitioner filed the instant petition for a writ of habeas corpus before this Court. Petitioner raises the same claims he raised on appeal in the New York state courts. Specifically, he argues (1) his Sixth Amendment right to confront his accusers and his right to a fair trial were violated by the testimony of two detectives at trial; (2) autopsy photos of the deceased victim were improperly admitted into evidence; (3) the trial court should have permitted an alibi witness to testify as part of his defense; (4) his sentence is excessive and should be reduced; (5) the trial court gave the jury an unduly prejudicial verdict sheet; (6)

the evidence was legally insufficient to establish his guilt; and (7) his trial counsel was ineffective. Respondent filed an opposition brief and affidavit on March 3, 2009, and petitioner filed a reply on March 23, 2009. The matter is fully submitted.

## II. DISCUSSION

### A. Standard of Review

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Section 2254 requires that federal courts apply a deferential standard of review to claims that were adjudicated "on the merits" in state court. Specifically, under § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented
in the State court proceeding.

28 U.S.C. § 2554.

"Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id*.

However, "if the federal claim was not adjudicated on the merits [in state court], 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## B. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "adequate and independent" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotations omitted). If it determines that a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, petitioner's first, fifth, and sixth claims are procedurally defaulted. The first claim of the instant habeas petition asserts that petitioner's confrontation and fair trial rights were violated because two testifying police detectives referred to statements by other people that implicated petitioner. The fifth claim challenges the verdict sheet used at trial. The sixth claim challenges the sufficiency of the evidence underlying petitioner's conviction.

In reviewing these claims on direct appeal, the Appellate Division stated that petitioner "failed to preserve" the first claim for appellate review and that the fifth and sixth

claims were "unpreserved for appellate review" because petitioner's trial counsel failed to make the necessary objections at trial. *See* 855 N.Y.S.2d at 161-62. A failure to preserve an issue for state appellate review is clearly an adequate and independent state procedural ground that will preclude federal habeas review of the issue. *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (finding that failure to preserve issue for appeal was adequate and independent state law ground precluding federal habeas review); *see also Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991). This is true even though, in petitioner's case, the state court went on to rule "in any event"[3] on the merits of all three of these issues. *Glenn*, 98 F.3d at 724-25; *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted."). Therefore, the state courts decided the issues raised in claims one, five, and six of the instant habeas petition on adequate and independent state law grounds. Moreover, petitioner has demonstrated neither "cause and prejudice" for his procedural default nor that failure to consider the claim will result in a miscarriage of justice. Accordingly, these claims are procedurally defaulted. Nevertheless, in an abundance of caution, the Court has reviewed the merits of all petitioner's claims below, including these procedurally defaulted claims, and finds that none of them warrant habeas relief.

## C. Merits

### 1. Admission of Testimony Regarding Out of Court Statements That Implicated Petitioner

As noted above, the first ground of the instant habeas petition concerns the state court's admission of testimony by two detectives alluding to out-of-court statements that presumably implicated petitioner. This claim is procedurally barred from habeas review. However, as set forth below, assuming *arguendo* the Court could review the merits of the claim, the Court finds that petitioner is not entitled to habeas relief.

### a. Background

By way of background, the two detectives who interrogated petitioner at the Nassau Homicide Squad on the afternoon and evening of October 3, 2001 both testified at trial. They testified that petitioner initially claimed that he was not involved in the shooting. (T. 503; T. 550.) However, both detectives stated that petitioner subsequently admitted he was the shooter. Specifically, Detective Trillo testified:

> [TRILLO:] His first initial response to us was that he wasn't in [the area where the shooting occurred]. From there, we advised him that we were investigating this case for well over a month, *we have spoken to a lot of people, as a matter of fact a person was arrested already that was involved in this a day earlier*. And I would say about a half hour later, about 1700 hours his first admission to us was that, okay, he was in the car.

[3] 855 N.Y.S.2d at 161-62.

[PROSECUTOR:] He said he was in the car?

[TRILLO:] He was in the vehicle involved in the shooting, correct.

[PROSECUTOR:] What did—specifically what did he say about being in the vehicle; did he say what he did or where he was?

[TRILLO:] He said he was sitting in the rear of the vehicle.

[PROSECUTOR:] And what did Detective Aponte do?

[TRILLO:] At that point, Detective Aponte advised him that, you know, we have spoken — *we were again reiterating that we had spoken to people, we had spoken to many people in this case; one person has been arrested a day earlier and we know he wasn't in the rear of the vehicle*, he's lying to us.

[PROSECUTOR:] What did the defendant say at that point in time?

[TRILLO:] He said that–his next statement was, "I didn't mean to shoot the girl."

(T. 502-03 (emphasis added).)

Detective Aponte also testified about the steps that led to petitioner's confession:

I told him that we were investigating the death of a young girl, that the case was a drive by shooting, that it happened in Westbury back in August . . . . I said do you know anything about it and he says . . . "I wasn't in Westbury."

I told him that we had a lot of detectives working on the case since August, that it was now October, there was a lot of manpower going into the investigation, a number of detectives working long hours, that we knew about it. I said you were in Westbury, my information is you were in Westbury. He maintained he wasn't in Westbury. We stayed with that for a while going back and forth . . . .

I told him you have to understand, it's been many, many hours of investigation into this, a lot of interviews being conducted. I said not only were you in Westbury, as I said before it was a drive-by, you were also in the car. My information is not only were you in Westbury, you were in the car. At that point, he concedes he was in Westbury, but he was behind the driver at the time . . . . *Again emphasizing the amount of investigation that had gone into it, the amount of people we had spoken to, I made him aware of the fact that other people had already been arrested in the case, that people that were in the car had already been spoken to, that people in the car had already been arrested to some extent.* I made him aware of all this and at the point he stopped, he just, like, slumped over, became somber in his tone and he said "I didn't mean to shoot the girl."

(T. 550-51 (emphasis added).)

7

Petitioner maintains that the references to statements made by people with whom the detectives had spoken constituted impermissible testimonial hearsay in violation of his Sixth Amendment rights. This argument is without merit.

### b. Applicable Law

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." *Henry v. Speckard*, 22 F.3d 1209, 1214 (2d Cir. 1994) (citation omitted). Thus, the Confrontation Clause prohibits the prosecution from introducing testimonial hearsay—*i.e.*, "testimonial" statements by a non-testifying declarant that are admitted for the truth of the matter asserted—unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-57 (2004); *see also Davis v. Washington*, 547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."). *Crawford*, however, declined "to spell out a comprehensive definition of 'testimonial,'" stating that, "[w]hatever else [the term] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.[4]

"Testimony need not contain an explicit assertion in order to be excluded as a violation of the Confrontation Clause." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002). As such, testimony that implies that an out-of-court declarant made an accusation against the defendant may violate the Confrontation Clause. In *Ryan*, for example, the petitioner was tried and convicted of second-degree murder. At petitioner's trial, the detective who supervised the investigation testified as a prosecution witness. He testified that, during the investigation of the murder, petitioner and another individual, Peter Quartararo, had come to a police station for interviews and were being interviewed in separate rooms by different detectives. The prosecutor asked the supervising detective whether, "as a result of" speaking to the detectives interviewing Peter Quartararo, he had "done something with respect" to the detectives interviewing petitioner. The supervising detective responded that he did. When asked by the prosecutor "[w]hat was that," he said he had told the detectives to "advise [petitioner] of [his] rights." The prosecutor followed up by asking "[a]s to what charge?" The detective answered "[m]urder." On habeas review, the Second Circuit found that this testimony

---

[4] *Crawford* had not been decided at the time of petitioner's trial and does not apply retroactively on habeas review. *See Birenbaum v. Graham*, --- F.3d - - -, 08-1375-pr, 2010 WL 2036951, at *11

(2d Cir. May 25, 2010) (citing *Whorton v. Bockting*, 549 U.S. 406, 421 (2007)). However, at the time the Appellate Division decided petitioner's direct appeal in 2008, the Supreme Court had decided both *Crawford* and *Washington v. Davis*. Therefore, for purposes of habeas review, *Crawford* and *Davis* are clearly established federal law because they were decided as of the date petitioner's conviction became final. *See id.* (citing *Mungo v. Duncan*, 393 F.3d 327, 333-34 (2d Cir. 2004)).

contained an implicit accusation by Quartararo—who did not testify at petitioner's trial—that petitioner had been involved in the murder. *See* 303 F.3d at 251-52 ("The People's direct and clear suggestion that police gave [petitioner] *Miranda* warnings because of what [Quartararo] said is not meaningfully distinct from testimony repeating those portions of [Quartararo's] testimony that inculpated [petitioner].").[5] Thus, the court held that testimony implying that a non-testifying declarant had inculpated the petitioner violated the petitioner's Confrontation Clause rights. *See id.*

However, there is no Confrontation Clause issue when the out-of-court statements are admitted for purposes other than showing the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9; *United States v. Logan*, 419 F.3d 172, 177 (2d Cir. 2005). Thus, courts have allowed the introduction of out-of-court statements not for their truth, but to provide background information. *See, e.g., Logan*, 419 F.3d at 177-79 (finding no Confrontation Clause violation when court allowed admission of co-conspirators' out-of-court statements to detectives); *Newland v. Lape*, No. 05 Cv. 2686 (JFK), 2008 WL 2485404, at *5 (S.D.N.Y. June 19, 2008) ("Although out of court statements offered for the truth of the matter asserted are generally inadmissible as hearsay, statements admitted merely to complete a narrative or explain the actions of a police officer are admissible." (internal citations and quotation omitted)); *see also*

*Carroll v. Greene*, No. 04 Civ. 4342 (RWS), 2006 WL 2338119, at *17 (S.D.N.Y. Aug. 11, 2006) (finding that hotel employee's testimony regarding gestures made by hotel guests towards petitioner was not testimonial hearsay because it was introduced for the purpose of showing why employee attempted to apprehend petitioner). The Second Circuit has stated that "[t]estimony containing hearsay may be admissible not for its truth but as background information if (1) the non-hearsay purpose by which the evidence is sought to be justified is relevant and (2) the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." *Ryan*, 303 F.3d 231, 252 (2d Cir. 2002).

More specifically, courts have allowed the introduction of out-of-court statements intended to explain how and why a criminal defendant made a confession and to rebut a defendant's argument that the confession was coerced. *See, e.g., Tennessee v. Street*, 471 U.S. 409, 414 (1985) (finding evidence of non-testifying co-conspirator's confession admissible to show defendant's confession was not coerced). In *Klimawicze v. Trancoso*, 313 F. App'x 904 (7th Cir. 2009), for example, a habeas petitioner had confessed to murdering her mother. The confession came after her accomplice saw her in the interrogation room and told her that he had "told [police] the truth." The accomplice's statement was admitted at petitioner's trial through the testimony of a detective and an assistant state's attorney. 313 F. App'x at 905. The Seventh Circuit found, under the AEDPA standard of review, no Confrontation Clause violation occurred because the accomplice's statement was not admitted for the truth of the matter asserted, but to "explain why [petitioner] confessed shortly thereafter."

---

[5] The detective who had been interviewing the petitioner in *Ryan* also testified at trial. He stated that after speaking to the supervising detective, he advised petitioner of his rights. The Second Circuit also found this testimony violated the Confrontation Clause. *See* 303 F.3d at 251-52.

*Id.* at 904.

### c. Application

Here, as a threshold matter, it is unclear whether statements referenced by the detectives were by a non-testifying declarant. *Cf. Crawford*, 541 U.S. at 59. Although two occupants of the car did not testify at trial, a fourth occupant of the car—Oliver Andrades—did testify.

In any event, the references to the out-of-court statements did not violate the Confrontation Clause because the references were used to explain the background of petitioner's confession and to rebut the defense argument that the detectives coerced the confession. From early in the trial, the defense had, quite reasonably, attempted to plant seeds of doubt in the jury's mind regarding the voluntariness of petitioner's confessions. For example, in voir dire, the defense counsel asked potential jurors whether it was "impossible that a police officer could try to obtain evidence or statements from someone against their will?" (T. 148.) Furthermore, in his opening statement, defense counsel told the jury "to keep an open mind" regarding whether "it's possible that someone might a make a confession contrary to truth or contrary to his own free will." (T. 262.) Thus, by the time Aponte and Trillo testified, it was clear that the defense would attempt to challenge the voluntariness of petitioner's inculpatory statements. And, after Aponte and Trillo testified, petitioner took the stand and claimed he only confessed after being beaten for two and one half hours. (T. 646.) Thus, the relevance of the out-of-court statements was not that those statements implicated petitioner in the shooting. As discussed below, there was other, overwhelming evidence of petitioner's guilt.

Instead, the statements demonstrated how and why petitioner went from initially denying any involvement in the shooting, to saying he was in the car, to admitting he was the shooter. *Cf. Ryan*, 303 F.3d at 253 (declining to apply background exception because "[t]he testimony was not necessary or relevant to a material issue in the case—it did not offer an explanation for something about which the jury would be curious," and, even if relevant, was unduly prejudicial).

Additionally, the references to the out-of-court statements were a relatively minor part of the detectives' testimony. This fact further demonstrates that the references to the out-of-court statements were used solely to provide context and background and were not unfairly prejudicial. The balance of the detectives' testimony concerned details regarding petitioner's own oral, written, and videotaped statements in which he admitted that he shot and killed 14-year old Jessica during a drive-by shooting. Although the prosecutor alluded to the out-of-court statements in his closing statement, he did so to summarize the evidence that petitioner's confession was voluntary.[6] *Compare Klimawicze*, 313 F. App'x at 909 (finding statements used to provide context where, *inter alia*, the jury did not "hear any testimony concerning the substance of [accomplice's] confession") *with Mason v. Scully*, 16 F.3d 38, 43 (2d Cir. 1994) (finding habeas petitioner's confrontation rights violated by introduction of out-of-court statement where, *inter alia*, prosecutor "sought to elicit" and "emphasized in his summation" the fact that the out of court statement inculpated petitioner). In sum, because the testimony was not admitted for the truth of the matter asserted, the detectives'

---

[6] (*See* T. 752; T. 754-55.)

references to out-of-court statements did not violate petitioner's confrontation rights.

Finally, to the extent petitioner argues that the references to the out-of-court statements violated his right to a fair trial, that argument is also without merit. In determining whether a state court's alleged evidentiary error deprived a habeas petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003); *Ramos v. Phillips*, No. 104-CV-1472-ENV, 2006 WL 3681150, at *6 (E.D.N.Y. Dec. 12, 2006). Here, the testimony was proper under New York law. New York law allows testimony to be introduced for the non-hearsay purpose of rebutting petitioner's challenge to the voluntariness of a confession. *People v. Lewis*, 782 N.Y.S.2d 321, 322 (App. Div. 2004) ("Contrary to defendant's contention in appeal . . . [the court] properly allowed two officers to testify that they had informed defendant during interrogation that his codefendant had implicated him in the crimes and that there were witnesses who had identified him at the crime scene. Although the codefendant's statement to the officers was testimonial, it was not offered for the truth of the facts asserted therein, but was instead offered to set forth the circumstances in which defendant admitted his culpability after initially denying all involvement in the crimes[.]" (internal citations omitted)); *see also People v. Glover*, 600 N.Y.S.2d 562, 562 (App. Div. 1993) ("The burden is upon the People to establish voluntariness and, in the absence of circumstances involving physical force, voluntariness may best be determined

through an examination of the totality of the circumstances surrounding the confession." (internal quotation marks and citation omitted)). Moreover, even if the admission of the evidence was erroneous under state law, petitioner would still need to show the error deprived him of his right to a fair trial. *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) "Due process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Id.* (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* Petitioner cannot make such a showing here given the strong, indeed overwhelming, evidence against him. *Cf. Tingling v. Donelli*, No. 07 Civ. 1833(RMB)(DF), 2008 WL 4724567, at *9 (S.D.N.Y. Oct. 24, 2008) ("Moreover, in light of the other strong evidence of Petitioner's guilt . . . Petitioner has not shown that the admitted evidence removed a reasonable doubt that otherwise would have existed."); *Clanton v. Rivera*, No. 06 Civ. 4756 (DAB) (AJP), 2008 WL 2839712, at *21 (S.D.N.Y. July 22, 2008) (stating that, even if state court erred in admitting evidence of uncharged robbery, "any such error did not deprive [petitioner] of a fundamentally fair trial, given the strong evidence against him").

Finally, even if the state court erred in allowing the detectives to refer to the out-of-court-statements, any error was harmless for purposes of habeas review. *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (holding that "in § 2254 proceedings a [federal] court must assess the prejudicial impact of constitutional error in a state-court criminal trial" by determining

whether the error had a "'substantial and injurious effect'" on the jury's verdict (quoting *Brecht* v. *Abrahamson*, 507 U.S. 619, 631 (1993)); *see also United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) ("It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, . . . and *Crawford* does not suggest otherwise."). As discussed above, the references to the presumably inculpatory out-of-court statements were made in passing and were not a large part of the prosecution's overall case. Instead, there was overwhelming evidence that petitioner murdered Jessica Grimes. Petitioner admitted his guilt through oral, written, and videotaped statements; Andrades, who was in the car, stated petitioner was the shooter; and forensic evidence and eyewitness testimony were consistent with petitioner's confessions and the testimony of Andrades. In short, although this issue is procedurally defaulted, were this Court to reach the merits and find that the state court committed constitutional error, any error would be harmless given the overwhelming evidence of petitioner's guilt.

2. Admission of Autopsy Photographs

Petitioner also contends that the trial court erred in allowing the prosecution to admit a photograph of the victim's heart and five other photographs of her wounds. As set forth below, petitioner has not established he is entitled to habeas relief on this claim. The evidence was properly admitted under state law and, even if its admission was erroneous under state law, its admission was not so egregious as to rise to the level of constitutional error.

"Erroneous evidentiary rulings do not automatically rise to the level of constitutional

error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *accord Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (1991) ("[H]abeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must demonstrate that the error deprived him of his right to "a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))). As noted above, federal habeas courts engage in a two-part analysis to determine whether a state court's evidentiary ruling deprived a petitioner of a fair trial. First, the court asks whether the trial court's evidentiary ruling was erroneous under state law. Second, the court asks whether the error amounted to the denial of the constitutional right to a fundamentally fair trial.

Here, the evidence was properly admitted under New York law. Under New York law, demonstrative evidence, such as a photograph of a deceased victim, is generally admissible if it tends "to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." *People v. Pobliner*, 298 N.E.2d 637, 645 (N.Y. 1973) (citations omitted). Specifically, "[p]hotographs of homicide victims are admissible to demonstrate the position of the victim's body or the placement of the victim's wound or wounds." *People v. DeBerry*, 651 N.Y.S. 2d 559, 560 (App. Div. 1996). Here, autopsy photographs were

relevant to corroborate the medical examiner's testimony that Jessica died from a single gunshot wound to the chest. *See People v. Simon*, 897 N.Y.S.2d 578, 580 (App. Div. 2010) ("The autopsy photograph was relevant to illustrate and corroborate the testimony of the Medical Examiner with respect to the cause of death."); *People v. Hayes*, 897 N.Y.S.2d 370, 371 (App. Div. 2010) ("The photographs were properly admitted in evidence to assist the jury in understanding the Medical Examiner's testimony concerning the extent of the victim's stab wound."); *People v. Graham*, 555 N.Y.S.2d 885, 887 (App. Div. 1990) (finding that admission of autopsy photographs showing fractures of victim's skull and brain hemorrhaging and bleeding were properly admitted); *People v. Stevens*, 544 N.Y.S.2d 889, 891 (App. Div. 1989) (holding that trial court did not commit an abuse of discretion in admitting "undeniably gruesome black and white photographs depicting [a homicide victim] after the attack and during the autopsy"). Thus, admission of the photographs was proper under New York law.

Moreover, even if the photographs were improperly admitted under state law, admission of the photographs did not deprive petitioner of a fundamentally fair trial. "Where the prejudicial evidence is 'probative of [an] essential element' in the case, its admission does not violate the defendant's right to due process." *Dunnigan*, 137 F. 3d at 125 (quoting *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)). In the instant case, causing the death of a person is an element of second-degree murder. *See* N.Y. Penal Law § 125.25(1). Therefore, displaying the photographs of the victim's wounds, which were allegedly caused by a gun shot and led to her death, was highly probative of causing the death of a person as required by the statute.

*Flores v. Fischer*, No. CV-05-1970(FB); 2006 WL 385317, at *4 (E.D.N.Y. Feb. 17, 2006) (finding that admission of autopsy photographs, including one showing a large opening in victim's head, did not violate petitioner's due process rights); *Franco v. Walsh*, No. 00 CIV. 8930AGSJCF, 2002 WL 596355, at *7-8 (S.D.N.Y Apr. 17, 2002) (denying habeas claim where state court permitted the prosecutor to display severely injured victim to jury because "the extent of the victim's injuries was clearly relevant"). In any event, given the overwhelming evidence of guilt, these photographs (even if erroneously admitted) could not have had a substantial and injurious effect on the jury's verdict. In sum, admission of the photographs did not violate petitioner's due process or fair trial rights. Thus, the state courts' resolution of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 3. Exclusion of Alibi Witness

Petitioner also argues that the trial court's decision to preclude the testimony of a proposed alibi witness violated his right to a fair trial. Specifically, petitioner states that the trial court abused its discretion by not allowing Martin Rodriguez Villalobo ("Villalobo"), petitioner's brother-in-law,[7] to testify. Villalobo was the owner of the blue Toyota Camry used in the shooting. (*See* T. 603.) The trial court refused to let Villalobo testify because the defense had failed to provide timely notice of the potential alibi witness. On direct appeal, the Second Department affirmed the trial court's ruling, holding that the exclusion of the proposed testimony was proper because the petitioner

---

[7] (T. 621.)

"failed to demonstrate good cause for his failure to provide timely notice." 855 N.Y.S.2d at 161 (citing C.P.L. 250.20(1) and *People v. Louisias*, 815 N.Y.S.2d 727 (App. Div. 2006)). Because the state court addressed this claim on the merits, albeit without directly referencing federal law, the deferential AEDPA standard of review applies. *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). As set forth below, the state courts' resolution of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

a. Background

The New York Criminal Procedure Law allows the prosecution, "not more than twenty days after arraignment," to demand the defendant provide notice of any potential alibi witnesses. *See* N.Y. Crim. Proc. Law § 250.20(1). If the defendant intends to call alibi witnesses, he must, within eight days of being served with the demand for notice, provide the prosecution with the names, addresses, and contact information for potential alibi witnesses. *See id*. If the defendant fails to provide this information but nonetheless attempts to call an alibi witness at trial, the prosecution may preclude the witness's testimony. *See id*. § 250.20(3).

Here, the prosecution served the defense with a demand for alibi witnesses in October 2001. (Resp.'s Brief at 17.) It had received no response when trial began in October 2003, two years later. (*See id*.)

On the morning voir dire began, defense counsel stated that, the previous week, petitioner had "brought up that he had some witnesses that he wanted to call in as alibi witnesses . . . which he had not advised me before." (T. 3.) According to defense counsel, petitioner stated that he had told his initial defense attorney about these potential witnesses. Defense counsel spoke to petitioner's initial defense attorney who told him "he had not received any such information, as such he had not filed an alibi notice." (*Id*.) Defense counsel further stated that he was unaware as to who specifically these potential witnesses were or what information they could provide. (*Id*.) At this, the trial judge noted that two years had passed since the shooting and suggested that defense counsel talk to the potential witnesses first. (T. 3-4.)

Later, during the first day of the prosecution's case, the prosecutor told the court that he had been given names, but not phone numbers or addresses, for four potential alibi witnesses. (T. 305-06.) The judge then told defense counsel that the notice was insufficient, that the record should "indicate the defendant is not making a good faith effort," and that "notice should have been served a long, long time ago." (T. 306.) Defense counsel stated that he had attempted to meet with the potential witnesses, but that they failed to show up for an appointment. (T. 306.) The judge further stated that any delay "operates to [petitioner's] prejudice" and warned defense counsel that "maybe [petitioner] won't be permitted to give the alibi defense under New York State Law." (T. 306-07.)

Four days later, towards the close of the prosecution's case, defense counsel stated that he had found one potential alibi witness—a person named Villalobo, who owned the car used in the shooting. (T. 602-03.) Defense counsel proffered that Villalobo would testify that petitioner returned the keys to the car at 1:10 a.m. on August 26, 2001—about ten minutes before the shooting. (*See* T. 604.)

The prosecutor stated that he would move to preclude the witness because notice had not been timely served. He further noted that Villalobo had not been one of the four people on the list defense counsel had provided previously. (T. 603.) The trial court stated it would hear argument on the prosecution's motion to preclude at the close of the prosecution's case. (T. 604.)

After the prosecution had rested, defense counsel made an offer of proof regarding Villalobo's anticipated testimony. The prosecutor renewed his objection, pointing out that the shooting happened over two years ago; that he had not received notice of Villalobo as a potential alibi witness until the middle of trial; and that he had never received an address or phone number for Villalobo. (T. 620-21.) The trial court then precluded Villalobo from testifying because of the untimely notice, and the Appellate Division affirmed this decision.

b. Application

As noted above, the trial court had the power under New York State Law to exclude Villalobo from testifying because petitioner failed to comply with the notice requirements of New York Criminal Procedure Law § 250.20. Moreover, even if the state courts incorrectly applied § 250.20, this Court cannot grant habeas relief for errors of state law. *See Estelle*, 502 U.S. at 67. The Court, however, will construe the petition as asserting a claim that the state courts' rulings violated his Sixth Amendment right to present witnesses.

The Sixth Amendment states, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." The Second Circuit has stated

that in "interpreting [this] text, the Supreme Court has made clear two general propositions." *Wade v. Herbert*, 391 F.3d 135, 140 (2d Cir. 2004). The first is that a criminal defendant "has a right . . . to present witnesses in his defense." *Id.* at 141 (citing *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988)). The second is that this right "exists only as part of the adversary process, and defense witness testimony may be limited or even excluded as a sanction for the violation of valid discovery rules." *Id.* (citing *Taylor*, 484 U.S. at 410-11.). If a defendant fails to comply with a notice requirement regarding alibi testimony, exclusion of the testimony may be warranted when the failure to disclose resulted from willful misconduct by the defendant, when there is a "substantial risk" that the alibi was fabricated, or when the misconduct would cause the prosecution "irremediable prejudice." *See Wade*, 391 F.3d at 142.

In *Wade*, for example, the petitioner was tried and convicted in state court for a murder in Queens. A few days before his state-court trial was to begin—and four years after the murder and a year after the petitioner's arrest—the defense attempted to serve notice of an alibi witness. As cause for the delay, the petitioner apparently argued that he could not recall where he had been on the night of the murder. *See id.* at 139-40. The trial judge precluded the alibi testimony because of the untimely notice, and the state appeals courts affirmed that ruling on direct review. The Second Circuit also denied the petitioner a writ of habeas corpus. The court explained that "the Appellate Division could have reasonably rejected [petitioner's] proffered explanation and concluded either that the alibi was deliberately withheld or that there was a strong likelihood that the alibi was fabricated at the last minute." 391 F.3d at 142. The

Court noted that, following the murder, petitioner had fled to Albany and lived there under a false name for three years. *Id*. at 143. Moreover, the Court cited the "improbability under the circumstances that [the petitioner] did not know where he was the night of the murder." *Id.* at 143. Finally, the court noted the prejudice to the prosecution from the late disclosure: "[b]y the time petitioner presented his alibi . . . it would likely have been difficult to find a witness who could remember the events from 1993 and rebut [the alibi witness's] story." *Id.* at 144.

In this case, the state courts' resolution of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law. First, the disclosure of Villalobo as a potential alibi witness occurred even later than the disclosure in *Wade*. Moreover, the circumstances of the late disclosure and the proffered excuse are highly suspicious. As noted above, as reason for the late disclosure, petitioner's trial counsel stated that petitioner's "family had approached the initial attorney . . . about these witnesses but due to the lack of interpreter [the original counsel] had not interviewed those people. I did contact [the original counsel, and he] indicated to me he had no such information, that is why he never submitted any alibi notice on his own. Those are the circumstances for the late notice." (T. 623-24.) However, if petitioner was with Villalobo literally minutes before the shooting occurred, one would expect that petitioner would have made every effort to let his trial counsel know that Villalobo could provide helpful testimony. There is no question that petitioner was aware of the identity of Villalobo (who was his brother-in-law) from the date of the incident. As it was, trial counsel was unaware that Villalobo was a potential alibi witness until after the trial

began. (*See* T. 602-03; 620-21.) Under the circumstances, there is a substantial risk that the alibi was fabricated and that petitioner (although, not necessarily his trial counsel) had willfully delayed disclosure of Villalobo as a potential witness. As the Supreme Court stated in *Taylor*, it is "reasonable to presume that there is something suspect about a defense witness who is not identified until the 11th hour has passed." 484 U.S. at 414; *see also, e.g., Batchilly v. Nance*, No. 08 Civ. 7150 (GBD) (AJP), 2010 WL 1253921, at *28-30 (S.D.N.Y. Apr. 2, 2010) (denying habeas claim based on state court's exclusion of alibi witness where, *inter alia*, defense had not attempted to serve alibi notice until trial was underway); *Bhuiyan v. Burge*, No. 04 CV 744 (JG), 2004 WL 1895235, at *5 (E.D.N.Y. Aug. 25, 2004) (denying habeas claim based on state court's exclusion of alibi testimony where petitioner claimed to have found witnesses three years after crime occurred and noting "the risk that [petitioner] 'found' witnesses that really weren't there is palpable. And if [petitioner] did know of the two witnesses and chose not to disclose their existence until the middle of his second trial, that is just the sort of wilful gamesmanship the Supreme Court addressed in *Taylor*."); *Cruz v. Artuz*, No. 97-CV-2508 (FB), 2002 WL 1359386, at *12 (E.D.N.Y. June 24, 2002) (stating that there was "simply no plausible reason why" habeas petitioner failed to tell his attorney about witness who petitioner was allegedly with at time of shooting); *see also United States v. Pearson*, 159 F.3d 480, 484 (10th Cir. 1998) (affirming trial court's preclusion of alibi testimony where proposed alibi witness—the defendant's mother—had not told defense counsel or government investigators of alibi story until days before trial "despite its obvious importance").

Additionally, the prosecution would have been severely prejudiced if Villalobo was allowed to testify. Although the trial court could have adjourned the trial, under the New York alibi notice statute, an adjournment could not be "in excess of three days." *See* N.Y. Crim. Proc. Law § 250.20(3); *see also Cruz*, 2002 WL 1359386, at *12 n.7 (noting "that if the appropriateness of a continuance were at issue, the assessment of prejudice to the prosecution would undoubtedly take into account that part of the alibi disclosure statute that provides that adjournments may not be 'in excess of three days.'"). Therefore, the prosecution would have faced significant hurdles in investigating the basis for (and finding potential witnesses to rebut) Villalobo's proposed testimony, which related to events that had transpired over two years earlier.

In sum, Villalobo's "11th hour" appearance as a potential alibi witness without proper notice was highly suspicious, without adequate explanation, and would have severely prejudiced the prosecution. Under the circumstances, the preclusion of Villalobo's testimony was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 4. Excessive Sentence

Petitioner also seeks habeas relief on the ground that his sentence is excessive because this is a first offense, he experienced a difficult childhood, and a lesser sentence would be sufficient to serve the aims of deterrence, retribution, and rehabilitation.

As a threshold matter, to the extent that petitioner relies on state law as a grounds for an excessive sentence claim, such a claim is not cognizable on habeas review. *See, e.g.,*

*Wilson v. Ercole*, No. 06-cv-553 (DLI), 2009 U.S. Dist. LEXIS 23447, at *30-31 (E.D.N.Y. Mar. 23, 2009) ("On his direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. The Appellate Division declined, stating that the 'sentence imposed was not excessive.' Petitioner now re-asserts this identical claim. Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d)." (internal citations omitted)).

To the extent petitioner raises a federal claim that his sentence was cruel and unusual punishment under the Eighth Amendment, the Court rejects such an argument. For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 U.S. Dist. LEXIS 6990, at *11-12 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review." (citation omitted)); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

Under New York law, second-degree murder, N.Y. Penal Law § 125.25(1), is a Class A-I felony. For a class A-I felony, at the time of petitioner's sentence in May 2004, the minimum sentence was required to be between 15 and 25 years and the maximum sentence was life. *See* N.Y. Penal Law §

70.00 (repealed July 22, 2004). Petitioner was sentenced to 25 years to life on this charge. Petitioner was also convicted of criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03(1), a Class C felony. For a Class C felony, the maximum sentence was 15 years. *See* N.Y. Penal Law § 70.00 (repealed July 22, 2004). Petitioner received a 15-year sentence on this count. Finally, petitioner was also convicted of criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02(4), which is a Class D felony. For a Class D felony, at the time of petitioner's sentencing, the maximum sentence was seven years. *See* N.Y. Penal Law § 70.00 (repealed July 22, 2004). Petitioner received a seven-year sentence on this count. Thus, petitioner's sentence was "within the range prescribed by state law," *see White*, *supra*,[8] and, as such, it presents no basis for habeas relief.

### 5. The Verdict Sheet

Petitioner also claims that his due process rights and his right to a fair trial were violated because the verdict sheet that the court submitted to the jury did not include all of the statutory language applicable to the charge of second-degree murder. As discussed above, this claim is procedurally barred from habeas review. However, even assuming *arguendo* that this Court could review petitioner's claim on the merits, the claim would not entitle petitioner to habeas relief.

---

[8] In any event, even if the Court could review the sentence within the range prescribed by state law, the Court would find no basis to conclude that petitioner's sentence was grossly disproportionate to the crime committed so as to violate the Eighth Amendment given the nature of the criminal activity.

Under New York State law, when a trial court submits to the jury "two or more counts charging offenses set forth in the same article of the law," the trial judge may include specific statutory language on the verdict sheet to distinguish between two counts. N.Y. Crim. Proc. Law § 310.20(2) ("Whenever the court submits two or more counts charging offenses set forth in the same article of the law, the court may set forth . . . specific statutory language, without defining the terms, by which the counts may be distinguished[.]"). The statute does not require that the applicable provisions be set forth in their entirety, as the purpose of the annotations is simply to distinguish between multiple counts of the same offense. *See People v. Pimentel*, 725 N.Y.S.2d 1, 2 (App. Div. 2001) ("CPL 310.20(2) does not require that the pertinent Penal Law provisions be set forth in their entirety." (quotations omitted)). Here, the indictment charged petitioner with two counts of second-degree murder—one under an "intentional murder" theory and the other under a "depraved indifference" theory.

Thus, under § 310.20(2), the trial court was permitted to include specific statutory language on the verdict sheet to distinguish between the two theories. The trial court did so. With respect to the definition of intentional murder, the verdict sheet stated: "Person is guilty of Murder in the Second Degree when with intent to cause the death of another person he causes the death of such person." (T. 804.) The statute, however, reads "a person is guilty of murder in the second degree when [w]ith intent to cause the death of another person, he causes the death of such person *or of a third person*." N.Y. Penal Law 125.25[1] (emphasis added). The "of a third person" phrase allows a defendant to be convicted of intentional murder under a "transferred intent" theory. Petitioner objects

to the omission of the phrase "of a third person" from the verdict sheet in his trial. It can be inferred that petitioner believes he was prejudiced by the omission because he intended to shoot Winston Leger, whom he believed was a Blood, not Jessica.[9]

As a threshold matter, the Court again notes that, even if the state courts misapplied § 310.20(2), federal habeas relief is unavailable to correct errors of state law. *See Bonton v. Ercole*, No. 08-CV-526 (ARR), 2008 WL 3851938, *19 (E.D.N.Y. Aug. 18, 2008) ("The court need not resolve the question of whether the incomplete language violated § 310.20(2), however, because, even assuming *arguendo* that the annotated verdict sheet violated New York law, petitioner has not demonstrated that the violation ran afoul the U.S. Constitution."); *Anderson v. Keane*, 283 F. Supp. 2d 936, 942 (S.D.N.Y. 2003) ("[A] violation of CPL. § 310.20(2) does not in and of itself violate the United States Constitution."). Instead, petitioner must show that any error regarding the annotated verdict sheet "'so infected the entire trial that the resulting conviction violate[d] due process.'" *Bonton*, 2008 WL 3851938, at *19 (quoting *Melendez v. Scully*, No. 91-cv-2947 (RR), 1993 WL 41769, at *6 (E.D.N.Y. Feb. 10, 1993)).

Petitioner cannot make that showing here. The notations on the verdict sheet were clearly intended simply to assist the jury in distinguishing between the two murder counts. The notations were not unduly suggestive.[10] Moreover, the trial court accurately instructed the jury on the transferred intent doctrine.[11] Under these circumstances, no constitutional error occurred. *Cf. McLean v. Green*, No. CV-05-5603 (SLT)(SMG), 2009 WL 4778824, at *14 (E.D.N.Y. Apr. 15, 2009) (recommending denial of habeas claim based on verdict sheet because notations on verdict sheet "were not suggestive, and they could not have been interpreted by the jury as anything more than a guide to the allegations and evidence pertinent to each count."); *Bonton*, 2008 WL 3851938, at *20 (finding notations on verdict sheet "were simple and helpful in distinguishing the various murder counts and did not violate due process"); *Miller v. Greene*, No. CV-05-3131 (JG), 2005 WL 2757218, at *4 (E.D.N.Y. Oct. 25, 2005) (denying habeas relief on claim that verdict sheet violated due process by failing to include all elements of first-degree murder). *See generally United States v. Bozza*, 365 F.2d 206, 225 (2d Cir. 1966) (Friendly, J.) (rejecting challenge to written summary of the counts in the indictment which omitted several essential elements of the charged crimes because "in his charge the judge read each count and fully explained what the jury must find in order to convict"). In sum, even if this claim were not procedurally defaulted, petitioner would not be entitled to habeas

---

[9] In this *pro se* habeas petition and in his brief in support of the petition, petitioner does not present any argument on this claim. The Court, however, draws this inference from the headings petitioner uses to describe his claims and from the brief he submitted in state court. Petitioner does not appear to dispute that the trial judge's jury charge included an accurate instruction on the transferred intent doctrine.

[10] In fact, if anything, the absence of a reference to transferred intent arguably made the verdict sheet more favorable to petitioner.

[11] "In this regard the intended victim and the actual victim need not be the same person. In other words, it is not required that the person who died was the same person who was intended to be killed." (T. 793.)

relief on the merits.

## 6. Sufficiency of the Evidence

The Court also construes the petition as asserting a sufficiency of the evidence claim. Although petitioner does not directly assert this claim, his petition attempts to incorporate by reference the same claims the petitioner raised in the Appellate Division. (*See* Pet., at 2.) In the Appellate Division, in addition to the brief submitted by his appellate counsel, petitioner also submitted a *pro se* supplemental brief. As subpoint C to Point I of the supplemental brief, petitioner asserted a claim for "insufficiency of evidence."

The Court will construe the *pro se* petition as asserting this ground as a sufficiency of evidence claim under the Fourteenth Amendment's Due Process Clause. *See Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (stating that due process prohibits "conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970))). The law governing habeas relief from a state conviction based on insufficiency of evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler*, 109 F.3d at 840. As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04 Civ. 0856(JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Flowers v. Fisher*, No. 06-5542-pr, 2008 U.S.

App. LEXIS 22569, at *3, 2008 WL 4643911 (2d Cir. Oct. 21, 2008) (habeas petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 433 U.S. at 324)); *Policano v. Herbert*, 507 F.3d 111, 115-16 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)) (alteration in original).

Here, the evidence of petitioner's guilt, on both the murder charge and the weapons charges, was overwhelming. As noted above, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.25(1). In this case, petitioner admitted through oral, written, and videotaped confessions that he intended to shoot and kill a member of the Bloods gang, believed Leger was a Blood, and shot at him, intending to kill him. Instead, however, a bullet fired by petitioner struck and killed Jessica Grimes. Oliver Andrades, who was in the car with petitioner, corroborated petitioner's account of the events of August 25-26, 2001. Additionally, eyewitness testimony was consistent with the type of car petitioner and Andrades said they used. Moreover, forensic evidence—showing the bullet that killed Jessica probably came from a .38 caliber revolver—was also consistent with petitioner's confessions and Andrades's testimony.

There was also overwhelming evidence on the weapons charges. At the time petitioner was convicted, "[a] person [was] guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another . . . [h]e possesse[d] a loaded firearm." N.Y. Penal Law § 265.03(2). Also, at the time, "a person [was] guilty of criminal possession of a weapon in the third degree when . . . [s]uch person possesses any loaded firearm." N.Y. Penal Law § 265.02(4). As set forth above, there was overwhelming evidence that petitioner possessed a loaded firearm with (1) intent to use it against another and (2) unlawfully. Accordingly, even if petitioner had not procedurally defaulted on this claim, he would not be entitled to habeas relief.

### 7. Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective for (a) failing to object to the testimony of Detectives Aponte and Trillo that referenced the out-of-court statements presumably implicating petitioner; (b) failing to object to the verdict sheet; and (c) failing to move for a directed verdict based on insufficiency of the evidence. Petitioner raised these claims on direct appeal, and the Appellate Division addressed them on the merits.[12] Therefore, the deferential AEDPA standard of review applies. As set forth below the Court determines that the state courts' resolution of petitioner's ineffective assistance

claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), petitioner must demonstrate two elements in order to state a successful claim for ineffective assistance of counsel. First, petitioner must show that "counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability

---

[12] *See People v. Reyes*, 855 N.Y.S.2d 160, 162 (App. Div. 2008) ("The defendant's claims of ineffective assistance of counsel, as set forth in his main brief and supplemental *pro se* brief, are without merit as defense counsel provided the defendant with meaningful representation.").

that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). As set forth below, none of petitioner's ineffective assistance of counsel claims meet this standard.

### a. Failing to Object to Aponte/Trillo Testimony

Petitioner argues that his counsel was ineffective for failing to object when Aponte and Trillo referred to out-of-court statements that presumably implicated petitioner.

Initially, as set forth in more detail above, the testimony of Aponte and Trillo was proper under New York law and did not violate the Confrontation Clause. The testimony was relevant for the permissible, non-hearsay purpose of describing the circumstances of petitioner's confession. Moreover, even assuming *arguendo* that the testimony was improper, counsel's decision not to object was reasonable under the circumstances. The detectives' references to out-of-court statements were made in passing and did not specifically mention any particular individual. Objecting could have highlighted for the jury that additional witnesses—beyond those who testified at trial—implicated petitioner. *See, e.g.*, *Singleton v. Duncan*, No. 03 Civ. 561(ARR), 2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006) (holding simple disagreements over trial strategies or tactics, alone, do not merit ineffective counsel); *cf., e.g.*, *Henry v. Scully*, 261 F.3d 210, 218 (2d Cir. 1996) (affirming district court's finding of ineffective assistance of trial counsel where counsel's failure to object to inadmissible testimony was an inconceivably incomprehensive defense strategy). In short, even assuming the testimony should have

been excluded or stricken, trial counsel's failure to object was not objectively unreasonable.

Moreover, even if petitioner could satisfy the first prong, he would still need to show he was prejudiced by the failure to object. As set forth above in the discussion regarding petitioner's Confrontation Clause claim, the references to out-of-court statements were a small part of the overwhelming case against petitioner. Even if trial counsel had objected and the trial court sustained the objection and struck the testimony, there is no reasonable probability of a different outcome at petitioner's trial. *See Rodriguez v. Senkowski*, No. 03 Civ. 3314(AJP), 2004 WL 503451, at *41 (S.D.N.Y. Mar. 15, 2004) ("[I]n light of the extremely strong evidence against [petitioner], any deficiency of counsel would not satisfy the second *Strickland* prong, of showing that [petitioner] was prejudiced."); *see also Kanani v. Phillips*, No. 03 Civ. 2534(AJP), 2004 WL 2296128, at *32 (S.D.N.Y. Oct. 13, 2004) ("Due to the overwhelming evidence of [the petitioner's] guilt, it is unlikely that additional investigation would have affected the outcome of the trial."). Therefore, petitioner cannot meet the second prong of the *Strickland* test on this claim.

### b. Failing to Object to the Verdict Sheet

Petitioner also asserts that his trial counsel was constitutionally ineffective for failing to object to the verdict sheet. The Court disagrees. As noted above, the trial court was permitted under New York law to annotate the verdict sheet to distinguish between the two murder counts. The trial court was not required, however, to include the full statutory text on the verdict sheet. Moreover, as noted above, the absence of the phrase "of a third

person," if anything, made the verdict sheet more favorable to petitioner. Under these circumstances, and in light of the overwhelming evidence against petitioner, trial counsel's failure to object was not unreasonable, nor was petitioner prejudiced by the failure to object.

### c. Failing to Challenge the Sufficiency of the Evidence

Finally, petitioner argues that he received ineffective assistance of counsel because his trial counsel did not move to have the charges "thrown out based on insufficient evidence." This claim is without merit.

As a threshold matter, defense counsel in fact moved to dismiss the indictment at the conclusion of the prosecution's case. (T. 615-16.) The trial court denied that motion. (T. 616.) In any event, given the overwhelming evidence against petitioner, any failure by trial counsel to otherwise challenge the sufficiency of evidence grounds was not unreasonable, nor was petitioner prejudiced. *Cf. Love v. Smith*, No. CV-08-3746 (BMC) 2009 WL 2422384, at *4 (E.D.N.Y. Aug. 6, 2009) ("Because the evidence was legally sufficient to convict, counsel did not err in failing to move to dismiss."); *Alexander v. Graham*, No. 07-CV-59 (NG), 2008 WL 4239167, at *6 (E.D.N.Y. Sept. 11, 2008) (rejecting argument that trial counsel was ineffective for failing to challenge sufficiency of evidence because challenge would have been unsuccessful); *Besser v. Walsh*, No. 02 Civ. 6775 (LAK) (AJP), 2003 WL 22093477, at *35 (S.D.N.Y. Sept. 10, 2003) ("Because [petitioner's] sufficiency of the evidence claim . . . is meritless, his trial counsel cannot be faulted for failure to raise a meritless claim"). *See generally United States v. Arena*, 180 F.3d 390, 396 (2d Cir. 1999) ("Failure to make a

meritless argument does not amount to ineffective assistance.")

In sum, petitioner's arguments that his trial counsel was constitutionally ineffective are without merit. Accordingly, the state courts' resolution of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

### IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is denied in its entirety on the merits. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 1, 2010
Central Islip, NY

\* \* \*

Petitioner is *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney, Nassau County, 262 Old County Road, Mineola, NY 11501 by Margaret M. Mainusch and Sarah Spatt, Assistant District Attorneys.